UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-23480-CIV-WILLIAMS/MCALILEY

LEADING EDGE MARKETING INC.,

    Plaintiff,

vs.

THE INDIVIDUALS, PARTNERSHIPS
AND UNINCORPORATED
ASSOCIATIONS IDENTIFIED ON
SCHEDULE "A,"

    Defendants.
_____/

**REPORT AND RECOMMENDATION
ON AMENDED MOTION FOR FINAL JUDGMENT
BY DEFAULT AS TO CERTAIN DEFENDANTS
AND ORDER**

    Plaintiff, Leading Edge Marketing, Inc., filed an Amended Motion for Entry of Final Judgment by Default (the "Motion")[1] as to Defendants numbered as 1, 2, 5, 8, 9, 11, 13, 15-16, 18-22, 24, 26-39, 41, 43-47, 49, 51-57, 59-87, 89-92, 94, 99, 102-103, 104-106, 109, 111, 113, 115-116, 119-122, 126, 129, 130, 133-137, 140, 142-143, 145-148, 151, 153-155, 157, 159, 161-162, 164-166, 169, 171-172, 174, 176-179, 189, 191, 192, 195-196, 198, 199, 204-209, 211, 215-216, 218-220, 223-224, 226-227, 234, 237-249, 251-254,

---

[1] Plaintiff amended its initial Motion for Entry of Final Judgment by Default to omit a mistaken reference to damages "in the amount set forth in Exhibit 1". (ECF No. 82 at 4); (ECF No. 83 at 1 n.1). The rest of the Motion remains unchanged.

1

256-257, 259, 260-272, 275-286 and 288 ("Defaulting Defendants" or "Defendants"),[2] which the Honorable Kathleen M. Williams referred to me for a report and recommendation. (ECF Nos. 83, 93). Defendants have not filed a response and the deadline to do so has passed. For the reasons that follow, I recommend that the Court grant Plaintiff's Motion. (ECF No. 83).

## I.   BACKGROUND[3]

Plaintiff is the owner of all rights in and to the PROEXTENDER trademark, U.S. Reg. No. 3,206,305 for "Adult Sexual Aids, Namely, Penis Extenders" in International Class 10, registered February 6, 2007, which is valid and registered on the Principal Register of the United States Patent and Trademark Office (the "PROEXTENDER Mark" or "Mark"). (*Id.* at 4 ¶ 20);[4] *see also* (Certificate of Registration, ECF No. 1-2). Plaintiff created and sells products under that Mark, which function as penis enlargers. (ECF No. 57 at 4 ¶ 19).

Defendants use seller identifications ("Seller IDs") – set forth in Schedule "A", (ECF No. 57-1), an attachment to the Amended Complaint – to promote, advertise, distribute, sell, and/or offer for sale cheap copies of Plaintiff's products in interstate commerce, that are counterfeits and infringements of Plaintiff's trademark (the

---

[2] The Motion also asks the Court to enter a default judgment against Defendants numbered as 96 and 108. Since Plaintiff filed the Motion, the Court has dismissed those Defendants based on Plaintiff's Notices of Voluntary Dismissal. (ECF Nos. 94, 95, 97, 98).

[3] These facts are found in Plaintiff's Amended Complaint. (ECF No. 57).

[4] Citations to this Court's docket are to the CM/ECF-assigned page numbers, not to the original page numbers of filed documents.

"Counterfeit Goods"), and they do so using Internet based e-commerce stores. (ECF No. 57 at 9 ¶ 57). The Counterfeit Goods cause "confusion, mistake, and deception among members of the trade and the consuming public as to the origin and quality of [D]efendants' Counterfeit Goods." (*Id.* at 14 ¶ 90).

Defendants' unlawful activities have caused and will continue to cause irreparable injury to Plaintiff because Defendants have (i) deprived Plaintiff of its right to fairly compete for space within search engine results and reduced the visibility of Plaintiff's genuine goods on the Internet; (ii) caused an overall degradation of the value of the goodwill associated with the PROEXTENDER Mark; and (iii) increased Plaintiff's overall cost to market its goods and educate consumers via the Internet. (*Id.* at 11 ¶ 69).

Plaintiff sues Defendants under federal law for (1) trademark infringement pursuant to § 32 of the Lanham Act, 15 U.S.C. § 1114, (2) false designation of origin pursuant to § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); and under Florida common law for (3) unfair competition and (4) trademark infringement. (*Id.* at 13-17).

Plaintiff properly served Defendants with the Complaint and summonses via email and Internet publication, consistent with the Court's Order Authorizing Alternate Service. (ECF Nos. 14, 30, 31, 50, 52). Defendants have not filed a response to it, and no attorney has entered a notice of appearance on their behalf.

On February 15, 2022, the Clerk entered default against Defendants for failure to plead or otherwise defend, pursuant to Rule 55(e) of the Federal Rules of Civil Procedure. (ECF No. 78).

3

Plaintiff thereafter filed the Amended Motion for Entry of Final Judgment by Default. (ECF No. 83). It asks the Court to enter a default final judgment in Plaintiff's favor and against Defendants, and requests that the Court (1) permanently enjoin Defendants' unlawful use of Plaintiff's trademark; (2) award Plaintiff statutory damages in the amount of $100,000.00 per Defendant; and (3) award Plaintiff attorneys' fees that total $43,418.75, and costs in the amount of $402.00, for a total amount of $43,820.75. (*Id.* at 10-15).

## II. STANDARD

A court may enter a default judgment against a defendant who has failed to plead or otherwise defend against the lawsuit. *See* Fed. R. Civ. P. 55(b)(2). Before it may do so, the Court must determine that there is "a sufficient basis in the pleadings for the judgment entered," which finding is "akin to that necessary to survive a motion to dismiss for failure to state a claim." *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1245 (11th Cir. 2015) (quotation marks and citation omitted). The Complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When a defendant defaults, it admits as true all well-pleaded factual allegations in the complaint. *Tyco Fire & Sec., LLC v. Alcocer*, 218 F. App'x 860, 863 (11th Cir. 2007).

## III. ANALYSIS

### A. Liability

To state a claim for trademark infringement under the Lanham Act, 15 U.S.C. § 1114, Plaintiff must plead facts that show: (1) it possesses a valid trademark; (2) Defendants used that trademark in commerce; and (3) Defendants' use of Plaintiff's

4

trademark is likely to confuse consumers. *Colonial Van Lines, Inc. v. Colonial Moving & Storage, LLC*, No. 20-CIV-61255, 2020 WL 6700449, at *2 (S.D. Fla. Oct. 20, 2020) (citing *N. Am. Med. Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1218 (11th Cir. 2008)).

The elements to state a claim for false designation of origin under the Lanham Act, 15 U.S.C. § 1125(a), are "effectively ... the same ... as a trademark infringement claim, namely, that (1) [the plaintiff] has a valid, protectable mark and (2) the defendants' use of the mark in commerce is likely to cause confusion, or to cause mistake, or to deceive." *Cole-Parmer Instrument Co. LLC v. Prof. Labs., Inc.*, 568 F. Supp. 3d 1307, 1316 (S.D. Fla. 2020) (quotations omitted) (citing *TracFone Wireless, Inc. v. SND Cellular, Inc.*, 715 F. Supp. 2d 1246, 1254–55 (S.D. Fla. 2010); *Suntree Techs., Inc. v. Ecosense Int'l*, 693 F.3d 1338, 1347-48 (11th Cir. 2012)).

This same analysis of the Lanham Act claims applies to Plaintiff's Florida common law claims of unfair competition and trademark infringement. *See Cole-Parmer Instrument Co.*, 568 F. Supp. 3d at 1317 (citing *Suntree Techs., Inc.*, 693 F.3d at 1345).

The factual allegations in the Amended Complaint, summarized above, properly support each cause of action. I therefore recommend that the Court enter default final judgment on all counts in favor of Plaintiff and against Defendants.

**B.   Injunctive Relief**

Pursuant to the Lanham Act, a district court is authorized to issue an injunction to prevent future violations of trademark law "according to the principles of equity and upon such terms as the court may deem reasonable." 15 U.S.C. § 1116(a). "[I]njunctive relief is

5

the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement." *Burger King Corp. v. Agad,* 911 F. Supp. 1499, 1509-10 (S.D. Fla. 1995) (quoting *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1988)).

Permanent injunctive relief is appropriate where a plaintiff demonstrates that (1) it has suffered irreparable injury; (2) there is no adequate remedy at law; (3) the balance of hardship favors an equitable remedy; and (4) the issuance of an injunction is in the public's interest. *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006). Plaintiff has done this, and therefore I recommend that the Court enter permanent injunctive relief.

As to the first factor, irreparable harm may exist when there is "a substantial threat of customer confusion and the resulting harm to the plaintiff's reputation and goodwill." *Express Franchise Servs., L.P. v. Impact Outsourcing Sols., Inc.*, 244 F. Supp. 3d 1368, 1384 (N.D. Ga. Mar. 20, 2017) (citing *FerrellGas Partners, L.P. v. Barrow*, 143 F. App'x 180, 190 (11th Cir. 2005); *Sound Surgical Techs., LLC v. Leonard A. Rubinstein, M.D., P.A.*, 734 F. Supp. 2d 1262, 1278 (M.D. Fla. 2010)). The Amended Complaint alleges that Defendants' counterfeit goods "are of a quality substantially different than that of plaintiff's genuine goods" and that Defendants market them "with the knowledge and intent that such goods will be mistaken for the genuine high-quality goods offered for sale by plaintiff…." (ECF No. 57 at 11 ¶¶ 61, 62). Plaintiff further alleges that Defendants' unlawful actions have caused Plaintiff irreparable injury to its goodwill and business reputation and will continue to do so if Defendants are not permanently enjoined. (ECF No. 57 at 11 ¶ 69; 12 at ¶ 75; 16 ¶ 106). Plaintiff further alleges that the unauthorized

6

Counterfeit Goods sold, offered for sale, marketed, advertised, and distributed by Defendants are nearly identical to Plaintiff's genuine Leading Edge products, and consumers viewing Defendants' counterfeit products would actually confuse them for Plaintiff's genuine products. (*Id.* at 9 ¶ 59; 14 ¶ 90).

As for the second factor, Plaintiff has no adequate remedy at law so long as Defendants continue to market their infringing products because Plaintiff cannot control the quality of what deceptively appears to be its own trademarked products in the marketplace. An award of monetary damages alone will not cure the ongoing injury to Plaintiff's reputation and goodwill, which will result if Defendants' infringing actions are allowed to continue. Turning to the third factor, Plaintiff faces hardship from loss of sales and its inability to control its reputation in the marketplace. Defendants, by contrast, can claim no hardship as they have no right to sell confusingly similar products with Plaintiff's Mark.

Finally, the public interest supports the issuance of a permanent injunction against Defendants to prevent consumers from being misled by Defendants' counterfeit products. *See Sanrio Co., Ltd. v. Sommer's Ent. LLC*, No. 18-CV-22177, 2019 WL 2010249, at *4 (S.D. Fla. Mar. 21, 2019) ("[T]he public interest weighs heavily in favor of entering a permanent injunction because such relief would protect the public from being defrauded by Defendants use and distribution of infringing and counterfeit goods.").

Defaulting Defendants have created an Internet-based infringement scheme in which they are profiting from their deliberate misappropriation of Plaintiff's rights. Unless the listings and images are permanently removed, and the infringing goods destroyed,

7

Defaulting Defendants can continue to infringe Plaintiff's intellectual property and defraud the public. I therefore recommend that the Court enter a permanent injunction to enjoin Defendants' unlawful use of Plaintiff's trademark.[5]

## C. Statutory Damages

Plaintiff asks, pursuant to 15 U.S.C. § 1117(c), that the Court award it statutory damages in the amount of $100,000.00 per Defaulting Defendant. (ECF No. 83 at 11-13). Section 1117(c) provides that in a case involving the use of a counterfeit mark in connection with a sale, offering for sale, or distribution of products, the plaintiff may elect an award of statutory damages at any time before final judgment is rendered in the sum of not less than $1,000.00 nor more than $200,000.00 per counterfeit mark per type of good. 15 U.S.C. § 1117(c)(1). Additionally, if the Court finds that Defendants' counterfeiting actions were willful, it may impose damages up to $2,000,000.00 per mark per type of good. *Id.* at (c)(2).

"This Court has defined willful infringement as when the infringer acted with actual knowledge or reckless disregard for whether its conduct infringed upon the plaintiff's copyright."[6] *PetMed Express, Inc. v. MedPets.com, Inc.*, 336 F. Supp. 2d 1213, 1220 (S.D. Fla. 2004) (quotation marks and citation omitted). Defendants, by virtue of their default,

---

[5] Plaintiff's Motion attaches a proposed Final Default Judgment and Permanent Injunction. (ECF No. 83-8). I recommend that the Court enter the injunctive relief therein. *See* (*id.* at Section A).

[6] Although the definition uses the term "copyright," courts apply this definition to trademark actions. *See, e.g.*, *Sream, Inc. v. Asat Inc.*, No. 18-14258-CIV, 2019 WL 1573337, at *4 (S.D. Fla. Apr. 11, 2019); *RooR Int'l BV v. Ecnature LLC*, No. 19-cv-319, 2019 WL 5188383, at *3 (M.D. Fla. Aug. 5, 2019), *report and recommendation adopted*, 2019 WL 5188279, at *1.

admit that their conduct was willful. The Amended Complaint alleges that Defendants infringe on Plaintiff's trademark "knowingly and intentionally or with reckless disregard or willful blindness to [P]laintiff's rights for the purpose of trading on [P]laintiff's goodwill and reputation." (ECF No. 57 at 12 ¶ 74).

The Court has wide discretion to determine the amount of statutory damages. *PetMed Express, Inc.*, 336 F. Supp. 2d at 1219 (citing *Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 852 (11th Cir. 1990)). An award of statutory damages is appropriate despite a plaintiff's inability to prove actual damages caused by a defendant's infringement. *See Volkswagen Grp. of Am., Inc. v. Varona*, No. 19-24838-CIV, 2021 WL 1997573, at *2 (S.D. Fla. May 18, 2021). Congress enacted a statutory damages remedy in trademark counterfeiting cases because evidence of a defendant's profits in such cases is almost impossible to ascertain. *PetMed Express, Inc.*, 336 F. Supp. 2d at 1219-20. Moreover, statutory damages are "especially appropriate in default judgment cases due to infringer nondisclosure." *Id.* at 1220. In sum, statutory damages are called for here.

The Court need not hold an evidentiary hearing, as there is sufficient evidence on the record to support the request for damages. *See SEC v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005); *see also PetMed Express, Inc.*, 336 F. Supp. 2d at 1223 (entering default judgment, permanent injunction, and statutory damages in a Lanham Act case without an evidentiary hearing). In particular, the Court may award statutory damages in reliance on affidavits and other documentary evidence if the facts are not disputed. *Perry Ellis Int'l, Inc. v. URI Corp.*, No. 06-22020-CIV, 2007 WL 3047143, at *1 (S.D. Fla. Oct. 18, 2007) (citation omitted).

9

I have carefully considered the record of this action and find that it is reasonable to award statutory damages under 15 U.S.C. § 1117(c) in the amount of **$100,000.00** against each Defaulting Defendant. This award is sufficient to deter Defendants and others from continuing to counterfeit or otherwise infringe Plaintiff's trademark, compensate Plaintiff, and punish Defendants. *See Audi AG v. Sun Am. Corp., Inc.*, No. 17-CV-62199, 2018 WL 7021842, at *2 (S.D. Fla. Dec. 18, 2018) ("Awards of statutory damages serve two purposes—compensatory and punitive."), *report and recommendation adopted*, 2019 WL 188864 (S.D. Fla. Jan. 2, 2019). Other courts, facing somewhat similar circumstances, have found the same statutory damages award under § 1117(c) to be reasonable. *See, e.g.*, *Frugality Inc. v. Individuals, P'ships, and Unincorporated Ass'ns Identified on Schedule "A"*, No. 21-cv-23025, 2022 WL 686243, at *6 (S.D. Fla. Mar. 8, 2022) (awarding $100,000.00 as statutory damages per defendant); *Colonial Van Lines, Inc.*, 2020 WL 6700449, at *5 (same).

### D. Attorneys' Fees and Costs

#### 1. Attorneys' Fees

Plaintiff asks for an award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a).[7] Section 1117(a) provides that a court may award attorneys' fees in "exceptional cases." *Id.*

---

[7] Plaintiff also cites 35 U.S.C. § 284, which governs damages in a patent infringement action. (ECF No. 83 at 13). It is inapplicable here.

An "exceptional" case under the Lanham Act is one that "stands out from others," either based on the strength of the litigating positions or the manner in which the case was litigated. *Tobinick v. Novella*, 884 F.3d 1110, 1118 (11th Cir. 2018) (quoting *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014)). Courts consider the totality of the circumstances in their determination of whether a case is "exceptional." *Octane Fitness, LLC*, 572 U.S. at 554. "Courts routinely find cases involving willful infringement exceptional ...." *Volkswagen*, 2021 WL 1997573, at *16 (quotation marks omitted).

This qualifies as an exceptional case. First, as noted, Defendants' infringement of Plaintiff's trademark was willful. Second, the infringement of Plaintiff's product is so widespread that to try to protect its Mark, Plaintiff had to join hundreds of infringers as Defendants in this suit. Plaintiff was further challenged by the partial response by Defendants to the suit; it had to negotiate individual resolutions of the action with those Defendants who answered, and to seek default judgment for those who did not. The circumstances of this case justify an award of attorneys' fees, that will serve the important functions of deterring future infringements, penalizing Defendants for their unlawful conduct, and compensating Plaintiff for their fees. *See Frugality, Inc.*, 2022 WL 686243, at *7 (awarding attorneys' fees on similar grounds).

"A party seeking to recover attorneys' fees bears the burden of providing specific and detailed evidence so that a determination can be made of the necessity of the action and the reasonableness of the time claimed for the action." *Hermosilla v. Coca-Cola Co.*, No. 10-21418-CIV, 2011 WL 9364952, at *14 (S.D. Fla. July 15, 2011) (citing *ACLU of*

11

*Ga. v. Barnes*, 168 F.3d 427, 432-33 (11th Cir. 1999)). Plaintiff has attached its counsel's billing records to the Motion. *See* (ECF No. 83-6).

"The first step in computing a reasonable fee is to determine the lodestar, which is the product of the number of hours reasonably worked by a lawyer and a reasonable hourly rate." *Dillard v. City of Greensboro*, 213 F.3d 1347, 1354 (11th Cir. 2000) (citation omitted).

The reasonable hourly rate is determined by "[t]he prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Gray v. Lockheed Aeronautical Sys. Co.*, 125 F.3d 1387, 1389 (11th Cir. 1997) (citation omitted). The Court may use its own knowledge and experience in determining the reasonableness of attorneys' fees. *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988) (citations omitted).

Plaintiff requests these hourly rates for its counsel:

- $475.00 for Joel Rothman, Esq;
- $350.00 for Craig A. Wirth, Esq.;
- $325.00 for Angela Nieves, Esq. and Layla Nguyen, Esq.;
- $250.00 for paralegal Angela Nieves;[8]
- $200.00 for paralegals Christine James and Linsey N. Colyer; and
- $175.00 for Tyler Unfer, a legal assistant.

(Decl. of Joel Rothman, ECF No. 83-5 at 2-3 ¶¶ 8-15).

---

[8] Angela Nieves worked as a paralegal before she became an attorney.

12

Plaintiff provides no information about the prevailing market rate for lawyers of comparable skills, experience, and reputation. Nor does Plaintiff provide information about its attorneys', paralegals' and legal assistant's qualifications, as is required by the Local Rules of this Court. *See* S.D. Fla. L.R. 7.3(a)(5). Rather than cause further delay by directing Plaintiff to provide this information, the Court views counsel's website, www.sriplaw.com, and the Florida Bar's online lawyer directory, www.floridabar.org/directories/find-mbr/, for information about each timekeeper's credentials.

Mr. Rothman was admitted to the Florida Bar in 1996 and is Board Certified in Intellectual Property. He is the Managing Partner of his law firm, SRipLaw, which specializes in intellectual property infringement litigation. I find his hourly rate of **$475.00** is reasonable. *See Drone Nerds Franchising LLC v. Childress*, No. 19-CV-61153, 2020 WL 6264701, at *3-4 (S.D. Fla. Oct. 7, 2020) (reducing $750.00 hourly rate to $475.00 in intellectual property case for partner who was a highly experienced lawyer), *report and recommendation adopted*, 2020 WL 6263003 (S.D. Fla. Oct. 23, 2020); *Boigris v. EWC P&T, LLC*, No. 19-21148-Civ, 2020 WL 1692013, at *3 (S.D. Fla. Feb. 25, 2020) (finding the appropriate rate at the partner level to be in the $400 range in traditional intellectual property cases and awarding $475 per hour for partner work), *report and recommendation adopted*, 2020 WL 1692080 (S.D. Fla. Mar. 16, 2020).

Mr. Wirth was admitted to the Florida Bar in 2016 and is a Senior Associate at SRipLaw. I find his hourly rate of **$350.00** to be reasonable. *See Corson v. Gregory Charles*

*Interiors, LLC*, No. 19-cv-81445, 2020 WL 6323863, at *4 (S.D. Fla. Aug. 7, 2020) (Court awarded Mr. Wirth a $350.00 hourly rate).

Ms. Nieves and Ms. Nguyen were admitted to the Florida Bar in October 2021 and November 2020, respectively. Their hourly rates of $325.00 and $350.00 are unreasonably high. *See Beyond Games Ltd. v. Yossi Gallo Galimidi*, No. 20-23072-Civ, 2021 WL 4443943, at *7 (S.D. Fla. Jan. 27, 2021), *report and recommendation adopted*, 2021 WL 4441407 (S.D. Fla. Sept. 28, 2021) (the market rate for a first-year attorney in South Florida is $200.00). On this record, I find that a **$250.00** hourly rate is reasonable for Layla Nguyen, Esq. and Angela Nieves, Esq. *See id.*, 2021 WL 4443943, at *6-7 (reducing the hourly rate for a first-year attorney to $200.00 and finding that a $285.00 hourly rate for an attorney with three years' experience is reasonable).

Similarly, the rates for the paralegals at SRipLaw, including Angela Nieves in her capacity as a paralegal, are unreasonably high. Counsel's website provides little to no information regarding each paralegal's credentials. In similar instances when a party has not complied with Local Rule 7.3(a)(5) and provides no evidence regarding the paralegals' qualifications or experience, I have recommended that the Court reduce the paralegals' rates to **$100.00** per hour. *See, e.g.*, *Fernau v. Enchante Beauty Prods., Inc.*, No. 18-CV-20866, 2021 WL 1520755, at *8 (S.D. Fla. Mar. 11, 2021), *report and recommendation adopted*, 2021 WL 1152835 (S.D. Fla. Mar. 26, 2021). Other divisions of this Court have also found that rate appropriate. *See Caplan v. Rehabclinics (PTA) Inc.*, No. 19-CV-62890, 2020 WL 3977140, at *4 (S.D. Fla. July 13, 2020) (recognizing that reasonable hourly rates

14

for paralegals in this district typically range from $100-$200 and reducing the paralegals' rates to $95 per hour). I recommend the same here.

The Court concludes that compensating Plaintiff for the time of legal assistant Tyler Unfer is unreasonable. Courts cannot award attorneys' fees for clerical tasks, which are "normally completed by legal assistants or secretaries, not attorneys." *Martin v. Italian Cabinetry, Inc.*, No. 18-CV-24958, 2019 WL 3429919, at *3 (S.D. Fla. June 6, 2019) (citation omitted). Plaintiff provides no explanation about his tasks, and the billing entries do not clearly reflect that they are not clerical. I therefore recommend the Court exclude all hours of work Mr. Unfer performed.

Plaintiff's counsel billed a total of 295.10, which includes Tyler Unfer's 36.20 hours. When multiplied by Plaintiff's requested hourly rates, it totals $86,837.50. (ECF No. 83-6 at 126). Plaintiff asks the Court to divide that total in half "to account for attorneys' fees expended in connection with activities related to non-defaulting defendants," and award it, here, $43,418.75. (ECF No. 83-5 at 3-4 ¶ 16).

I agree with Plaintiff that a 50% reduction is appropriate. Plaintiff sued 291 Defendants, and each claim against each Defendant involves common legal and factual issues. It is understandably difficult to separate time spent on work per Defendant. Plaintiff settled with about one-third of the total number of Defendants and now seeks a default judgment against the other two-thirds it did not settle with. It is a reasonable estimate that Plaintiff's attorneys spent about half their time working towards settlements, and the other half litigating against the Defaulting Defendants. Moreover, Plaintiff's billing records are voluminous. They span 126 pages and include 7 different timekeepers, with 8 different

15

hourly rates. An hour-by-hour review is "simply impractical and a waste of judicial resources", especially when no Defendant has lodged an objection. *Loranger v. Stierheim*, 10 F.3d 776, 783 (11th Cir. 1994) (citation omitted).

This table represents (1) the number of hours each timekeeper worked (with Tyler Unfer's hours excluded), (2) the hourly rates this Court deems reasonable, and (3) the total fees per timekeeper, divided in half:

| Name | Hours | Rate | Total | **Total ÷ 2** |
|---|---|---|---|---|
| Joel Rothman, Esq. | 16.40 | $475.00 | $7,790.00 | $3,895.00 |
| Craig A. Wirth, Esq. | 1.40 | $350.00 | $490.00 | $245.00 |
| Angela Nieves, Esq. | 160.20 | $250.00 | $40,050.00 | $20,025.00 |
| Angela Nieves (paralegal) | 63.80 | $100.00 | $6,380.00 | $3,190.00 |
| Layla Nguyen, Esq. | 6.30 | $250.00 | $1,575.00 | $787.50 |
| Christine James (paralegal) | 1.20 | $100.00 | $120.00 | $60.00 |
| Linsey N. Colyer (paralegal) | 9.60 | $100.00 | $960.00 | $480.00 |
| Tyler Unfer (legal assistant) | 0 | N/A | $0.00 | $0.00 |
|  |  |  | $57,365.00 | **$28,682.50** |

I conclude that the Court should award Plaintiff reasonable attorneys' fees in the total amount of **$28,682.50**.

### 2. Costs

Plaintiff is entitled to recover "the costs of the action." 15 U.S.C. § 1117(a). Plaintiff asks the Court to award it $402.00 in costs, which represents the fee for filing the Complaint. (ECF No. 83 at 14); *see also* (ECF No. 83-6 at 124).

Title 28 U.S.C. § 1920 sets forth what may be taxed as costs. The $402.00 filing fee is taxable under § 1920 and Plaintiff is entitled to recover it. 28 U.S.C. § 1920(1); *Ramos v. Arba Constr.*, No. 20-25192-CIV, 2021 WL 4482659, at *3 (S.D. Fla. Aug. 25, 2021) (citation omitted), *report and recommendation adopted*, 2021 WL 4480169 (S.D. Fla. Sept. 30, 2021). I recommend that Plaintiff recover this cost from the Defaulting Defendants.

### 3. Allocation

Plaintiff asks the Court to impose the attorneys' fees and costs awards against Defendants jointly and severally. (ECF No. 83 at 14-15).

Courts have broad discretion to determine when to apportion fees and "how to divide liability." *United States v. Patrol Servs., Inc.*, 202 F. App'x 357, 362 (11th Cir. 2006) (quoting *Council for Periodical Distrib. Ass'ns v. Evans*, 827 F.2d 1483, 1487-88 (11th Cir. 1987)). "In apportioning attorney's fees, district courts should try to achieve the most fair and sensible solution as possible." *Id.* (quotation marks and citation omitted).

Courts may choose from a variety of approaches, to include: "(1) joint and several liability; (2) apportioning fees in accord with each defendant's relative degree of culpability; (3) awarding fees in the same proportions as the jury assessed damages; (4) apportioning fees based on the amount of time spent by the plaintiff in preparing his case against each defendant; and (5) apportioning fees by claims or defenses which are

17

specific to a particular defendant." *Kipu Sys. LLC v. ZenCharts LLC*, No. 17-24733-Civ, 2021 WL 1895881, at *8 (S.D. Fla. Apr. 6, 2021) (quotation marks and citation omitted), *report and recommendation adopted*, 2021 WL 4479451, at *1 (S.D. Fla. Sept. 30, 2021). "The default rule is that costs are to be imposed jointly and severally, and the burden is on the party seeking to avoid that to introduce evidence justifying apportionment and persuade the court to do that." *State Farm Fire & Cas. Co. v. Silver Star Health and Rehab*, 739 F.3d 579, 586 (11th Cir. 2013) (citing *In re Paoli R.R. Yard PCB Litigation*, 221 F.3d 449, 469 (3d Cir. 2000) (noting that the general rule in the Third Circuit is that the district court may apportion costs as it sees fit)).

As stated, Plaintiff sued 291 Defendants. Approximately one-third of them settled with Plaintiff, and the other 196 have defaulted. The Court cannot discern whether any one Defendant is more culpable than another. The claims against each Defendant are the same and involve common facts. Given the number of Defaulting Defendants, it is unreasonable to require Plaintiff to collect only a pro rata share of the fees from each Defendant when it is likely that Plaintiff will collect only a portion of its fees from only some Defendants. *See Moore v. Shands Jacksonville Med. Ctr., Inc.*, No. 09-cv-298, 2014 WL 12652475, at *7 (M.D. Fla. Apr. 3, 2014) ("Equities favoring joint and several liability include ... the unfairness of requiring the prevailing party to collect costs from several sources and bear the risk of non-payment from one or more of them.") (citation omitted). It is also significant here that no Defendant has come forth to provide justification for an apportionment of the amount of fees and costs.

18

I recommend that the Court impose the attorneys' fees and costs awards against Defendants jointly and severally.

## IV. CONCLUSION

For the foregoing reasons, I **RESPECTFULLY RECOMMEND** that the Court **GRANT** Defendant's Motion (ECF No. 83) and enter default final judgment on all claims in favor of Plaintiff and against the following Defendants listed in Schedule "A" as: 1, 2, 5, 8, 9, 11, 13, 15-16, 18-22, 24, 26-39, 41, 43-47, 49, 51-57, 59-87, 89-92, 94, 99, 102-103, 104-106, 109, 111, 113, 115-116, 119-122, 126, 129, 130, 133-137, 140, 142-143, 145-148, 151, 153-155, 157, 159, 161-162, 164-166, 169, 171-172, 174, 176-179, 189, 191, 192, 195-196, 198, 199, 204-209, 211, 215-216, 218-220, 223-224, 226-227, 234, 237-249, 251-254, 256-257, 259, 260-272, 275-286 and 288. I **FURTHER RECOMMEND** that the Court award Plaintiff statutory damages of **$100,000.00** against each Defaulting Defendant and that the Court award Plaintiff attorneys' fees that total **$28,682.50**, and costs in the amount of **$402.00**, for a total amount of **$29,084.50**.[9]

## V. OBJECTIONS

**No later than fourteen (14) days from the date of this Report and Recommendation** the parties may file any written objections to this Report and Recommendation with the Honorable Kathleen M. Williams, who is obligated to make a

---

[9] At the conclusion of its Motion, Plaintiff asks the Court to award "prejudgment interest in the foregoing amounts". (ECF No. 83 at 15). Plaintiff provides no actual amount and cites no legal authority to support its request. Moreover, Plaintiff's Proposed Final Default Judgment and Permanent Injunction (ECF No. 83-8) states nothing regarding prejudgment interest. I therefore recommend that the Court deny this request.

de novo review of only those factual findings and legal conclusions that are the subject of objections. Only those objected-to factual findings and legal conclusions may be reviewed on appeal. See *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985), *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989), 28 U.S.C. § 636(b)(1), 11th Cir. R. 3-1 (2016).

## VI. ORDER

During the objection period Plaintiff shall file with the Court a proposed final default judgment and permanent injunction, that tracks the language of the draft order Plaintiff filed at ECF No. 83-8, with modifications that reflect the remedies recommended in this Report and Recommendation.

RECOMMENDED and ORDERED in chambers at Miami, Florida this 7th day of November 2022.

CHRIS McALILEY
UNITED STATES MAGISTRATE JUDGE

cc: Honorable Kathleen M. Williams
   Counsel of record